Edwards, Ch. J.
delivered the opinion of the court. After stating the case, he proceeded : — The only question is, whether the 'widow of Elliott is entitled to dower in the land'thus sold by her hüsbahd, in his lifetime, she never having relinquished her right, '
It is said, that Elliott having no title at law, when he sold, but only an equitable interest, was, from the time of 'the salé, but a trustee for the Winns, his vendees ; that when he acquired the legal title, it was only in trust for them ; and that the wife'shall not be endowed of a trust estáte, created previous to the statüte'of Virginia, which took effect in January 1787.
Before the statute of 27th Henry VIII, commonly called the statute of uses, the wife óf a' feoffee to use's, Was not to be endowed of the estáte so held in cotíft- *485 dence to the use of another, because the husband had no beneficial interest; and the wife of the cestui/ que usé, was not to be endowed, because there was no trust or benefit declared for her in the original grant.
The feoffee, in fact, held the estate discharged of most of the febdal burthens, subject to escheat only, for the felony or other defect of blood of the feoffee to use’s. That statute, after reciting the various inconveniences óf uses, and amongst others, the defrauding the wife of her dower, enacted, that “ When any person shall be seized of lands,” &c. “ to the use, confidence, or trust, of any Other person,” &c. “the person Or corporation entitled to the use in fee simple, fee tail, for life, or years, or otherwise,' shall thenceforth stand and be seized and possessed of the land,” &c. “ Of, and in the like estates as they have in the use, trilst, or confidence,” &c.
This statute, without interrupting those conveyances to use, only converted the Interest of the cestuy que use, into a legal, instead Of an equitable ownership, and all the legal consequences of estates, dower amongst the rest,at Once attached, 1 ■ ■
⅛"The statute uses the words use, trust, and confidence; yet trusts, as now undérstOod, are the subsequent creatures of courts of equity ; and, in fact, the old doctrine Of uses, revived in another name. How the statute, so comprehensive in its ’ expressions, and introduced and enacted upon great deliberation, came to be evaded by introducing a few formal .words into conveyances, we are told by judge Blaekstone, in his commentaries- — See p.' 335 (Vol: 2) and Christian’s note. It seems that one or two technical scruples of the judges of the courts of common law gave birth to these trusts. One of these Was, that “ ho use could be limited on a use.” That the statute would execute only the first use ; and that the second, and all subsequent declarations of Use, was a mere nullity. And therefore, that upon a feoffment, or deed of bargain and sale to A. and his heirs, to the use of B. and his heirs, in trust for C. and his heirs, they held that A. was seized to the use of B. and his heirs, only ; and that the limitation’ over to C. was not embraced. A scruple indeed, it may well be called ; since no reason can be given why the use of trust to C. might not have been as well permitted, as that to B.; and thus, that an estate might have been handed through any number *486 of uses-, until executed by the statute in the last cesluy que trust.
Another scruple arose upon the use of the wopd. “ seized,” without the word possessed whereby the judges extended the statute only to such estates ⅜⅜ passed by livery or seizin formerly ; but not to those where-, of a man was said to he only possessed., Courts of chancery, however, determined that the last cesfuy que.trust in the feoffment, and seizin, to,uses, and the f estuy. que use of a ter m of years, were, in conscience, entitled to a performance for their benefit, although not executed by the statute. And thus it was, that uses, were, revived, under the denomination of trusts. It seems to have been well settled, as, contended for by the counsel for. the appellants, that, as a general,rule, “ abstracted,from all other circumstances,” the wife shppld not be endowed of a trust estate.
Thus the law stood, under the statute, of us.es, which, was in force in Virginia, until the first day of January 1787, whenthe statute of 1785 took effect, into' which the statute of Henry VIII, had been ingrafted, with some additional provisions c by which the wife became entitled to her dower, in the estate of the cestuy que trust..
Let us not forget what is now meant by a trust-, and apply these principles, by which uses and trusts have been governed, since the statute of uses, to the case under consideration — 1st, by considering a bond as a sufficient declaration of uses and trusts, to be operated upon by the statute ; or, 2dly, by considering, conveyances only, by proper and apt deeds, as embraced by the statute ; and therefore, that the bonds were the proper subjects of equity, independent of the statute.
Upon the first proposition, then, it is supposed that, when the appellants purchased in 1786, JElliott became a trustee to their use : if this use, or trust, would be executed by the statute, the beneficial interest and trust created, as between Gallaspie and Elliott, previous to that time, must have been equally executed: and thus Mrs. Elliott’s right of dower, ;by virtue of the statute, and of the legal estate thereby .transfered, would have attached, previous to the sale made „ by. her husband. For it cannot be supposed, that the estate was, to be in abeyance from the time Elliott purchased, aqji,obtained Gallaspie’s bond, in the year 1784-5, until fee sold án 1786.
*487 Upon the second proposition ; how would a coitrt of equity proceed upon the bonds ? By considering the agreement between the parties, if upon a sufficient con-* sideration, as raising a use, and by taking the bond as sufficient evidence of a consideration.
Again, equity might consider that done, which ought to have been done. If Elliott has obtained a deed from Gallaspie, he has not done any thing but what the chancellor must have otherwise directed ; the trust must be directed according to the contract of the parties — not at the whim and caprice of the chancellor ; the rule of right is the same in equity, as at law ; they differ as to the means of coining at the end proposed, but as to the end, ¡equitas sequitar legem. Elliott cannot be said to have committed any fraud in acquiring the legal title ; nor to have done a nugatory act; since by so doing he has enabled himself to comply with his bond to the appellants for a conveyance with warranty.
There is no privity of contract between Gallaspie and Winns ; for Elliott neither assigned nor contracted tó assign Gallaspie’ bond ; but to make the conveyance by himself, and with his Own warranty.
But let us consider the request which is made of the chancellor, as it respects the privation of the widow of her dower. She has the right at law to dower properly consummated, by seizin of the husband during coverture, united with a beneficial interest; and the claim in Opposition to hers, is derived from the husband himself, during the marriage.
The chancellor is asked to consider the case as though the husband, in his lifetime, had vested the estate by proper conveyances, in trustees ; with one, two, or mofe uses, declared previous to a trust for his Use ; and thus to divert the course of the law, and annihilate the interest of Elliott, and the time between-his purchase in 1784-5, and sale ; make the sale relate to the time of his own purchase ; and then to create a privity between Gallaspie and Winns ; or to suppose, that Elliott had entered upon his trustee, for the purpose of making a feoffment in'fee to the appellants with warranty. And for what is all this to be done ? For the pious purpose of defrauding the widow of her dower, upon the old trick of uses and trusts ; which the parliament of Great Britain, the legislature of Virginia, and of our own state, have dis *488 countenanced. It is to revive a doctrine fotmded on S scruple, and to enlarge a principle . which Blackstone in his commentaries (p. 33 2 Vol.) and chancellor Talbot, in Chaplin vs. Chaplin, (3 Pr. Wms. 234) declared to be then too broad, and without any good foundation* Blackst'oné says, that the refusal to give-the wife dower in a trust estate, arose from a caUtipus adherence to some hasty precedents, rather than front any well grounded principle : and Lord Talbot, speaking on the same subject* in the case before mentioned, declared that “he took it to be a settled principle, that the husband should be tenant* by the courtesy of a trust, though tlie wife should not be endowed thereof; for which diversity, as he could see no reason, so neither should he have made it.”
There are many cases where the claim of the wife to .dower of a trust estate, combined with other circumr stances, has been sustained in equity—See 2 Vernon 581 —Sir J. Jekyll’s argument, in Banks vs. Sutton, 2 Pr. Wms. 701—1 Pr. Wms. 321. In this case, the husband had,.during the marriage, a beneficial interest; acquired the legal title ; and died seized in law ; whereby the wife’s right to dower became complete at law. To oust her claim in equity, the appellants exhibited an equity against the husband, derived during the coverture, and from tlie hus,band. We think the wife’s claim an equitable and moral right, cotnmencing upon the marriage, to be endowed of such estate as the husband shall have a beneficial interest in, and whereof he may be seized at any time during the coverture, of such an estate as her iss-ue of the marriage might by possibility inherit. To defeat her claim at law, thus perfected, the appellants do not shew a title derived paramount the husband’s, but under him ; and their equity does not commence previous to the wife’s, but subsequent thereto. As to the wife’s right to be endowed of an inchoate estate of the husband, not reduced to a legal one during the coverture, but existing only in equity, we give no opinion ; the case does not require it. The wife’s claim in the present instance, is complete ⅛ equity and at law. — -—Decree affirmed.